## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE ENRIQUEZ CRUZ, | : | No.  3:21cv283 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| | : | |
| CITY OF POTTSVILLE, *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court for disposition is the report and recommendation ("R&R")

of Magistrate Judge Martin C. Carlson suggesting the disposition of the

defendants' motion for summary judgment in this civil rights action.  Plaintiff has

filed objections to the R&R, and the matter is ripe for disposition.

**Background[1]**

"On March 8, 2019, City of Pottsville police responded to a 911 call

reporting that a Hispanic male carrying a backpack was on the front porch of a

residence shooting a gun. (Doc. 93, Def. Stmt. of Mat. Facts ("SOF") at ¶¶ 1-10).

City of Pottsville police officers Webber, Messner, and Rainis responded, along

---

[1] The background facts are quoted from the R&R with only slight editing changes.  The parties do not disagree on most of the facts.  Defendant has raised a general objection to the factual background.  His brief reveals, however, that he only objects to certain portions.  The court will address these portions below where appropriate.  The court has reviewed all of the evidence including the recording of the 911 call and the body camera footage.

with Pennsylvania State Troopers Pahira and Rooney. (Id. ¶¶ 11-12). When officers arrived at the address, body cam footage[2] shows they encountered the plaintiff, Cruz, a Hispanic male, on the front porch of the residence carrying a backpack. (Id. ¶¶ 16-18). Cruz was ordered to put his hands up and he did not comply, instead walking away from police officers, repeatedly ignoring their commands. (Id. ¶¶ 19-26). Cruz alleges that he had not committed a crime, as he was just sitting on the porch waiting for an Uber, and that he feared for his life upon seeing officers approaching him with guns drawn. (Doc. 107, Pl. SOF ¶¶ 1-9).

Cruz entered a yard across the street and continued to ignore commands from officers to raise his hands. (Doc. 93, Def. SOF ¶¶ 25-26). Though it is unclear from the video footage, all parties agree that after Cruz entered the yard, he pulled out a gun and pointed it to his own head. (Id. ¶¶ 28, 30; Doc. 107, Pl. SOF ¶¶ 12-14). According to Cruz, he pulled the trigger at his own head twice, but the gun did not go off. (Doc. 107, Pl. SOF ¶¶ 15-17). Officer Rainis then deployed his taser, at which point Cruz dropped to the ground and appeared to be lying face down. (Doc. 93, Def. SOF ¶ 27; Doc. 93-4, Webber Body Camera Footage at 2:26-2:31). Cruz states that he was tased for twenty-three (23)

---

[2] Unless otherwise noted, the magistrate judge's review of the exhibits, including the 911 call and body cam footage, confirms the statement cited in the defendant's statement of facts.

seconds and after gaining control back of his upper body, he grabbed the gun next to him and again put it to his head and tried to pull the trigger a couple of times, but it did not work. (Doc. 107, Pl. SOF ¶¶ 20-21). He then cocked the gun and the bullet fell out and he locked the slide back so it could not fire, giving up his suicide attempt. (Id. ¶¶ 22-23). According to the defendants, Cruz refused orders to drop the gun and continued to move on the ground, at which point Trooper Rooney deployed his taser. (Doc. 93, Def. SOF ¶¶ 31-34). Indeed, the video footage seems to show Cruz's arm moving prior to the second taser being deployed, and officers repeatedly ordering him to drop the gun, although it is impossible from any view to see what is in his hand or where he is pointing it. (Doc. 93-4, Webber Body Camera Footage 2:30-2:43). Nonetheless, Cruz acknowledges possessing a firearm as he lay prone.

Here, the parties' accounts diverge, and the video evidence does not definitively confirm the necessary details. According to the defendants, the circuits in Trooper Rooney's taser did not close, meaning that Cruz would have felt no physical effect from the second taser. (Doc. 93, Def. SOF ¶¶ 40-50). Thus, according to the defendant, Cruz still had control of his weapon when Trooper Rooney saw Cruz move his firearm toward him in a sweeping motion, at which point Trooper Rooney dropped to the ground and yelled, "[S]hoot, shoot,

he's pointing it at me." (Id. ¶¶ 35-37). City of Pottsville police officers then shot Cruz. (Id. ¶ 38).

Cruz's description of the shooting differs. He argues that he did, in fact, feel the effects of Trooper Rooney's taser and lost full control of his entire body, was convulsing on the ground, unarmed, nonviolent, and completely incapacitated when he heard Trooper Rooney tell officers to shoot him. (Doc. 107, Pl. SOF ¶¶ 25-36). He also alleges that he heard officers yelling "slide locked back" before he was shot. (Id. ¶ 31).

The video footage does not bear out the discrepancies in the factual allegations. Although immediately preceding Trooper Rooney shouting that Cruz was pointing the gun at him, an officer yells, "the slide's back" (Doc. 93-3, Messner Body Camera Footage at 3:45), no view from any of the three body cam videos shows clearly what Cruz was doing with his arms at the time he was shot, nor is the gun clearly visible in the video. All that is clear is that Cruz fell to the ground after Officer Rainis deployed the first taser and remained on the ground throughout the rest of the encounter. (Doc. 94-4, Webber Body Camera Footage 2:26-3:00). But the video also shows officers repeatedly commanding Cruz to drop his gun and shows Trooper Rooney dropping to the ground and yelling, "[S]hoot, shoot, he's pointing it at me." (Doc. 93-3, Messner Body Camera Footage at 3:30-4:00). Thus, regardless of what Cruz's subjective motivations

4

and intent may have been, the uncontested evidence plainly shows that in the moment, Trooper Rooney perceived Cruz to be pointing a gun at him, and the trooper called out to other officers.

Cruz was shot in his stomach and from behind and was helicoptered to the hospital where he underwent surgery and survived. (Doc. 107, Pl. SOF ¶¶ 37-42). He states that he still has a bullet in his chest and fragments in his abdomen and pelvis and that he has not fully recovered mentally or physically from the incident. (Id. ¶¶ 43-44). Following his release from the hospital, Cruz was arrested and ultimately pled guilty to twelve counts charged in a criminal information, including reckless endangerment, resisting arrest, and firearms and drug charges. (Doc. 93, Def. SOF ¶ 56-59). The facts underlying the criminal information to which Cruz pled guilty included that he pointed a Colt Semi-Automatic Pistol and attempted to discharge the firearm in the direction of the officers. (Id.) In the course of his guilty plea, Cruz acknowledged these essential facts.

Cruz then initiated this case against the City of Pottsville, Pottsville Police Department, the Pottsville police officers who responded (collectively "the Pottsville defendants") as well as Pennsylvania State Trooper Rooney. (Doc. 1, Compl.). His original complaint, filed pursuant to 42 U.S.C. § 1983, alleged that the defendants violated his Fourth Amendment right to be free from unlawful

seizure, his Fifth and Fourteenth Amendment right to be free from excessive force, and his Eighth Amendment right to be free from cruel and unusual punishment as well as the Americans with Disabilities Act. (Id.)  The Court dismissed all claims against the City of Pottsville and the Pottsville Police Department and dismissed all claims against the other defendants except his Fourth Amendment unlawful seizure and excessive force claims and state law claims against Defendants Rooney, Messer, and Webber.  (Doc. 41).  Cruz subsequently settled with the Pottsville defendants, effectively dismissing all claims against them.[3] (Doc. 91, Doc. 117).  Following a period of discovery, the remaining defendant, Trooper Rooney, (hereinafter "defendant") moved for summary judgment."  (Doc. 108, R&R at 3-7).

The R&R recommends granting the summary judgment motion. Plaintiff has objected to the R&R, bringing the case to its present posture.

**Jurisdiction**

As plaintiff brings suit pursuant to 42 U.S.C. § 1983, the court has federal question jurisdiction.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

---

[3] Cruz was granted leave to amend his ADA and Monnell claims as well as his requests for declaratory and injunctive relief and subsequently filed an amended complaint.  Since these claims related only to the Pottsville defendants, who have settled, the R&R does not address them.

treaties of the United States.").  The court has supplemental jurisdiction over the

plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

In disposing of objections to a magistrate judge's report and

recommendation, the district court must make a *de novo* determination of those

portions of the report against which objections are made.  28 U.S.C. §

636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).

The court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.  Henderson v. Carlson, 812

F.2d 874, 877 (3d Cir. 1987).  The district court judge may also receive further

evidence or recommit the matter to the magistrate judge with instructions.  Id.

Here, plaintiff objects to the suggested disposition of a summary judgment

motion.  Granting summary judgment is proper "'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury

Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his

standard provides that the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material*

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

As noted by the R&R, the remaining claims in the complaint are: 1) plaintiff's Fourth Amendment False Arrest, False Imprisonment and Malicious

8

Prosecution claims; 2) plaintiff's excessive force claim; and 3) plaintiff's state law claims.  The court will address each issue in turn.

## I. Plaintiff's Fourth Amendment False Arrest, False Imprisonment, and Malicious Prosecution Claims

### A. False Arrest and False Imprisonment

Plaintiff alleges false arrest and false imprisonment against the defendant. Such claims are generally analyzed together.  Brockington v. City of Phila., 354 F. Supp. 2d 563, 570 n. 8 (E.D. Pa. 2005).  Both claims fail if plaintiff's arrest was supported by probable cause.

A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures. Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir.1995).   "The proper inquiry in a section 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir.1988).

Similarly, if probable cause existed for the arrest, then the false imprisonment claim fails. The law provides that an "arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant" to an arrest made

9

without probable cause. Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir.1995).

The presence of probable cause is generally a jury question.  The court, however, may decide at the summary judgment stage that probable cause existed when the evidence, viewed in the light most favorable to the plaintiff, "reasonably would not support a contrary factual finding."  Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).  To determine whether probable cause exists the court examines the facts in a "commonsense" totality of the circumstances approach.  Illinois v. Gates, 462 U.S. 213, 230 (1983).

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (quoting United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984).  "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir.2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In the instant case, plaintiff was arrested and pled guilty to various crimes under Pennsylvania law, including recklessly endangering another person,

firearm not to be carried without a license, and person not to possess, use, manufacture, control, sell or transfer a firearm.  (Doc. 93-5, Criminal Information; Doc. 93-6, Guilty Plea Colloquy).

As noted by the R&R, the record when viewed as a whole, demonstrates that no jury could find that the officers lacked probable cause to arrest plaintiff.  A 911 call recording confirms that police received a report of a Hispanic male with a backpack on the porch of a residence firing a gun.  (Doc. 93-1, 911 call).  Upon arrival, the officers found Cruz, a Hispanic man, with a backpack on the porch. It soon became apparent that he had a gun.  (Doc. 93, Def. SOF ¶¶ 16-18).  The officers attempted to instruct plaintiff to drop the weapon several times, which he did not do.  (Id. ¶¶ 19-26).  They tased him twice then perceived him as pointing a gun at Rooney. (Id. ¶¶ 1927, 31-34; Doc. 94-3 at 3:30-4:00).   Additionally, he has pled guilty to all of the charged crimes.  (Doc. 93-6, Guilty Plea Colloquy).

The officers on the scene had probable cause to arrest plaintiff because it is undisputed, and supported by the video evidence, that he was wielding a gun and ignoring the officer's commands.   Thus a review of the totality of the circumstances reveals that the officers had sufficient facts at the time of arrest to justify a reasonable belief that an offense was being committed by plaintiff.   The R&R will thus be adopted with regard to granting summary judgment in favor of the defendant on plaintiff's false arrest and false imprisonment claims.

11

**B. Malicious Prosecution**

The R&R also addresses plaintiff's malicious prosecution claim. The Third Circuit Court of Appeals has explained that "our precedents are clear that § 1983 plaintiffs alleging arrest and prosecution absent probable cause may bring malicious prosecution claims under the Fourth Amendment but are entitled to relief only if they are innocent of the crime for which they were prosecuted." Washington v. Hanshaw, 552 F. App'x 169, 173 (3d Cir. 2014) (citing Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000)). Thus, a plaintiff claiming malicious prosecution must establish innocence of the crime charged. Hector, 235 F.3d at 156. Here, plaintiff cannot prove he is innocent of the crimes charged because he pled guilty to them. (Doc. 93-6, Guilty Plea Colloquy). Accordingly, judgment will be granted to the defendant on plaintiff's malicious prosecution claim.

**II. Qualified Immunity Excessive Use of Force**

The final issue to be addressed with regard to the plaintiff's federal civil rights case is his claim that defendant used excessive force against him. The R&R addresses this issue in the context of qualified immunity, and the court shall proceed likewise.

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.' " Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The two-part test to determine whether government officials should receive qualified immunity is well settled. Montemuro v. Jim Thorpe Area Sch. Dist., 99 F.4th 639, 642 (3d Cir. 2024) (citing Anglemeyer v. Ammons, 92 F.4th 184, 188 (3d Cir. 2024)). Under the first prong of the qualified immunity analysis, a court must decide whether the facts that plaintiff has alleged (under Rule 12(b)(6)) or shown (under Rule 56) make out a violation of a constitutional right. Pearson v. Callahan, 555 U.S. 223, 232 (2009)(citation omitted).

Under the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (citation omitted). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In considering qualified immunity, the court may address the prongs of this test in any order. See Pearson, 555 U.S. at 242. The defendant bears the burden of

13

establishing that he is entitled to qualified immunity. Burns v. PA Dep't of Corr., 642 F.3d 163, 176 (3d Cir. 2011)(citing Harlow, 457 U.S. at 819).

The R&R begins its analysis by examining the second prong, whether the right at issue was clearly established at the time of defendant's alleged misconduct.  Here, plaintiff asserts the right to be free from the excessive use of force.  "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." Lamont v. New Jersey, 637, 182-83 (3d Cir. 2011).  Plaintiff claims that excessive force was used in that the police shot him.  The law provides that "apprehension by the use of deadly force is a seizure[.]" Tennessee v. Garner, 471 U.S. 1, 7 (1985).

The court must examine the case more closely, however, to determine exactly what the right at issue is.  The Third Circuit has explained as follows:

> When framing the constitutional right at issue, the Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality.  Rather, we must frame the right at issue with a high degree of specificity, accounting for both the specific facts at issue, and the specific context facing the officers.   Specificity is particularly important in excessive force cases because it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts.

Kelley v. O'Malley, No. 22-1688, 2024 WL 1208080, at *2-3 (3d Cir. Mar. 21, 2024) (internal citations, quotation marks and editing marks omitted).

In the instant case it is not Defendant Rooney, the sole remaining defendant, who shot plaintiff.  The shooting, however, evidently occurred due to Trooper Rooney dropping to the ground and shouting "Shoot, shoot, he's pointing it at me." (Doc. 93, Def. SOF at ¶¶ 35-37).  It was the Pottsville Police Officers who discharged their firearms.  (Id. ¶ 38).  The Pottsville defendants have settled their claims.  Thus, the focus is on Rooney, and the R&R frames the constitutional right at issue as "whether it is clearly established that an officer who perceives himself as being under mortal threat and urges others to intervene violates the constitution if the force the other officers used is later found to be potentially excessive." (Doc. 108, R&R at 22).  The court adopts this framing of the constitutional right at issue.[4]

Whether or not a right is clearly established is determined from Supreme Court and Third Circuit cases or from a "robust consensus of cases of persuasive authority in the Courts of Appeals." _James_ v. New Jersey State Pol., 957 F.3d 165, 172 (3d Cir. 2020).  Here, there is not Supreme Court precedent, Third Circuit precedent, or a robust consensus of persuasive caselaw in the Courts of Appeals stating that it is clearly established that an officer who perceives a

---

[4] Plaintiff argues that the right at issue is whether officers are entitled to qualified immunity where they increase the level of force used after the suspect ceases his resistance to the arrest.  (Doc. 116, Pl.'s Supplemental Objs. at 5).  Plaintiff bases this on his assertion that he was on the ground and not resisting or aiming his gun at anyone when he was shot. The court rejects this framing of the issue because, as set forth more fully below, it is inconsistent with the facts he pled guilty to in state court.

suspect pointing a gun at him and shouts "shoot, shoot, he's pointing it at me" is liable for allegedly excessive use of force by other officers.  Because the alleged constitutional right is not clearly established, the court agrees with the R&R that qualified immunity shields Defendant Rooney from liability.

Plaintiff's objection does not attack the law as found by the magistrate judge, rather, he attacks the facts.  He asserts that he did not point the gun at Rooney and in fact was incapacitated on the ground.  He claims that Defendant Rooney dropped to the ground and urged the other officers to shoot him because he heard a "pop" which put Defendant Rooney in fear.

The court, however, takes judicial notice of the plaintiff's guilty plea.  He pled guilty in Count 6 of the Criminal Information to pointing a Colt Semi-Automatic Pistol in the direction of Defendant Rooney and attempting to discharge the firearm in his direction. (See Doc. 93-5, Doc. 93-6).   In his guilty plea colloquy, Plaintiff admitted the truth of the facts set forth in the Information. (Doc. 93-6, ¶ 38).  Defendant's guilty plea where he admitted to aiming a firearm at Rooney completely undermines his assertion now that he did not aim a firearm at Rooney.  For plaintiff to claim now that the facts to which he pled guilty are not true would call into question his conviction.  In other words, to recover on his section 1983 claim, plaintiff would have to call into question and "necessarily imply the invalidity of his conviction of sentence", and plaintiff's claim must be

dismissed unless there is evidence that his state court conviction was reversed or called into question.  Heck v. Humphrey, 512 U.S. 477, 487 (1994).  No evidence has been  presented that plaintiff's state court conviction has been reversed or called into question.  Accordingly, plaintiff's attempt to generate an issue of fact here is unconvincing.

The R&R will be adopted with regard to the qualified immunity analysis. Summary judgment will thus be granted to Defendant Rooney with regard to the Fourth Amendment claim of excessive force.

## III. State Law Claims

All of plaintiff's federal law claims will be dismissed.  All that will remain in his case are the state law intentional tort claims of assault, battery, false arrest, false imprisonment, malicious prosecution, and negligence.  The R&R suggests that the court decline to exercise supplemental jurisdiction over the remaining state law claims.  The court agrees with the R&R and will not exercise jurisdiction over the state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if - ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should dismiss pendent state claims).  Accordingly, these claims will be dismissed.

## Conclusion

For the reasons set forth above, the court will adopt the R&R.  The plaintiff's objections will be denied.  The federal claims will be dismissed as legally deficient.  The court will decline to exercise jurisdiction over the state law causes of action, and these too shall be dismissed.  An appropriate order follows.

Date: 8/29/24

_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**